Good morning, Chief Judge Rickman, Judge Ullman, Old Ham, apologies, and Judge Southwood, Mr. Fowler. Interesting how I came into this case. I seem to always come into it right when things are happening. I came into the case at the time when Mr. Miranda had already had his trial. He was pending sentencing, and when I took over, I looked right away and I saw the conflict of interest issue was not handled, or at least in my opinion, was not handled properly. So I filed my motion to reconsider, raise the the Garcia issues, ask the court to reconsider, especially in light of the fact that the Garcia requirements were not met at the prior hearing, and then that was it. We went to sentencing, Mr. Miranda was sentenced, and then he went on a pretty much a long, somewhat long odyssey trying to get his brief in, and then once his second appellate lawyer got the brief filed, right before the trial, he was sent back to the court, and I think that's what happened. This hearing, Mr. Miranda asked if I would come in and make oral argument. So I appreciate the court allowing me to come in. My familiarity with the case, I felt confident that I could do this. Well, I guess we all come down to the fact is whether there was an actual conflict or not. That's the government's entire message in their brief, and that basically is they're relying on the cases of Guerrero, Jenna, arguing that there has to be a conflict. There must be an actual conflict, and Garcia requirements pointed to Garcia saying that you have a hearing only if a conflict exists. Now, the things that the courts have held in the past when you're talking about conflict of interest is, one, is there confidential information that's helpful to one and not the other? Two, are there closely related subject matter? And three, how close in time? In this case, we have the government presenting a confidential, well, not confidential informant, but a person that's assisting the government, and that was the main crux of the entire case. I mean, without Mr. Rivera, Mr. Rivera is the potential, I mean, the previous client of Mr. Macias, the trial court. Without Rivera, there was no case. Rivera was the main number one witness that put finger on Mr. Miranda. Without Rivera, there is no case. And so this had to be looked at scrupulously, at least in my opinion, because without this witness, they don't get to a conviction. So when we look at this, we have to decide whether it's confidential helpful to one and not the other, closely related subject matter, how close in time. The biggest, I'd say the biggest reason the district judge held in making this determination was that the distance in time was from 2008 when trial counsel had taken on representation of Mr. Rivera, the now cooperating witness, and the 2020 prosecution of Mr. Miranda. But what kind of gets lost in everybody's briefing and everybody's discussion is the fact that Mr. Rivera was sentenced to this case in 2019. He received five months. So while originally you've got 2008 representation, you have sentencing in 2019. Also, that was part of the record in this case is the government actually brought to the court's attention that Mr. Macias had represented Mr. Rivera's brother-in-law in another drug trafficking organization or conspiracy of that nature. So we have trial counsel with two possible conflict of interest. And then at that point, the government files their motion. They're asking the court to make a determination. But they don't ask the court to make a determination as to whether there's a conflict or not. Their main concern is that Mr. Miranda is aware of the conflict and that he voluntarily waives his right to conflict-free counsel. And so two weeks before trial, the government files their motion. And again, the motion is very specific. Advise Mr. Miranda of the conflict and whether his waiver of this conflict was knowingly and voluntarily exercised. The trial court asked for a response from the trial counsel. Trial counsel said, yes, Mr. Miranda is aware. He waives his right, attached an affidavit, and that was it. And then the day of trial, literally the day of trial, the district court holds a hearing. And apparently, I would assume that someone had advised the court that you have to have a Garcia hearing. You have to be an active participant in the discussions. And then you have to ask for or make sure that the client is aware of four requirements, the Garcia requirements. He's made aware of the conflict, understands the hazard of proceeding with conflicted counsel, that he's talked it over with conflicted counsel, and then the main crux of why we're here, in my opinion, is that he can have conflict-free counsel. That is the one requirement that is not raised in any of the hearings, not in the written responses of the trial counsel, not during this hearing that's happening literally two or three hours before they're going to bring in a jury. There's never any advisement that he could have conflict-free counsel. And the courts have held, this is Garcia, this is Infante. If you have a hearing, a conflict of interest hearing, if you have a Garcia hearing, you want it to comply with Rule 11. In other words, we want to make sure that it's manifest on the face of the record that these requirements have been laid out. And at the very least, they haven't. There is nothing on the record to indicate that all four of the Garcia requirements were met. Now, when you look at the timing of the Garcia hearing, this Court has frowned on trial day determinations. In Gray v. Estelle, this Court held that if you're going to have a hearing on conflict of interest and you're going to go forward with Garcia requirements, you can't do it on the day of trial. And largely because, yes, you can ask if he's aware, the client, understands, has he talked it over. But the main problem with having a Garcia hearing on the morning of trial is that the defendant may not understand that the Court can, one, appoint him counsel if he can't retain new counsel, and, number two, that the Court would continue the trial. The Gray case, the judges in the Gray case held, you just don't know if a defendant makes a decision to proceed with conflicted counsel because the defendant is not aware that the Court can continue the case. And so the decision for the defendant becomes, do I go with new counsel and start a trial with new counsel this morning who does not have any idea of what the case is about, or do I proceed with counsel that I already have who has knowledge of the case but who has a conflict of interest? And the Gray court said, that is what we want to avoid. That is why you don't have Garcia hearings the morning of trial. Now, what I'm asking the Court is not to come up with new rules or stretching Garcia to the parameters that it's not intended for. What I'm asking the Court to do is to enforce the requirements that this Court has already laid out. I'm asking for the Court to remand this case back to the district court with the instructions of, one, you have to have a Garcia hearing in this instance. Two, your reasons with regards to whether a conflict exists or not has to be manifest on the face of the record. And then, three, if you find that there is, then you need to proceed with the Garcia requirements. Are you aware of the conflict? Do you understand the hazard? Have you talked it over? And then, lastly, you can have new counsel if you so choose. Now, one of the things that the Infante Court talks about with regards to all of this changing of attorneys is the Infante Court cites, I believe it's Garcia Hasso, which says the attorney makes a decision between the possible alternative course of action in the case. In other words, the trial counsel does something different that they possibly would not have done but for the conflict. Once the specter of this conflict attorney rises, trial counsel hires a less experienced attorney to come into the case. Now, I myself am in private practice. I am the sole practitioner. However, I have in the past advised clients, hey, I may bring in somebody to help. There's always that I'm asked for a court to appoint second chair, or I may on my own ask another attorney to come into the case. So we clear it with the count. We clear it. So this is not something that's unusual. But what's unusual is that what the court should raise an eyebrow for is two weeks before trial, you bring in a less experienced counsel to help. But the main governmental position is Rivera. Rivera is the witness. That is the key. He is everything. And so we're talking about a trial counsel with 30 plus years of experience, cross-examining witness, main practice is criminal defense, and he takes himself out of the game and he puts in a less experienced attorney to handle the number one witness of the government's case. Now, I know the less experienced attorney, and I don't want to make it sound like anything I say is disparaging. But, I mean, if this is the main guy, Rivera is the government's case, you don't give up that witness to someone who doesn't have experience. Also, with regards to trial counsel, he never implied, never asked, he never advised Mr. Miranda, you know what, I'm going to take myself out. You hired me to do a job, but I can't do it now, so I'm going to get somebody else who's less experienced to handle it. Again, the record is not clear as to whether even Mr. Miranda knew that this was coming or this was the result. So, in conclusion, all I'm asking for is the court to enforce the Garcia requirements and have the court make a determination as to whether the waiver was voluntary, whether he realized hazards, whether it was discussed, but more importantly, that he has the right to proceed with conflict-free counsel. And that's… What's your best argument that there is a conflict? My best argument for a conflict, Your Honor, is number one, you have someone who is intimately involved with the government's witness. We're not talking about a representation a couple of years back or ten years back. We're talking about a recent 2019 sentencing involving Mr. Rivera, who is now testifying for the government and is in a position to help himself. At that point, he had been sentenced, correct? That's correct. And this was months before the trial began? The sentencing. The sentencing. Yes, ma'am. So what was the conflict? I mean, you're cross-examining someone or you're potentially cross-examining someone that you once represented. The conflict was that also the trial counsel did not cross-examine Mr. Rivera at all with regards to the relationship that trial counsel had, client-counsel relationship, with the witness's brother-in-law. That was ongoing at the time that this case went to trial. So that, by itself, would be a number one issue to ask this witness is, your brother-in-law is also involved in this. But that wasn't focused on. That was not even raised.  If no other questions, I pass the podium. Thank you. Good morning, Your Honors, and may it please the Court. Charles Fowler for the United States. This Court should affirm for two reasons. First, the defendant was not entitled to a Garcia hearing because the record does not show any actual conflict under this Court's precedent. And second, even in the event that a Garcia hearing was required, the district court correctly ruled that the colloquy that took place on the record was sufficient to determine that the defendant's waiver was knowing and voluntary. I want to touch briefly on a threshold issue, and I'm not going to dwell on it because it's really not in the briefing, but it relates to the standard of review, which, of course, the parties can't waive. And as I read through this record, it occurs to me that the defendant invited this error. This Court reviews invited errors for a manifest injustice, which is an even higher bar than plain error review. And this record is somewhat unusual. As soon as the government brought to the Court's attention this potential conflict, the issue of the past representation of this witness, the defendant made an affirmative written request supported by a sworn affidavit that his attorney be allowed to remain on through trial. Particularly given that request as reinforced by the colloquy on the first day of trial, and then proceeding through trial with the lawyer, the Court did exactly what the defendant had affirmatively asked that he do, which is allow that lawyer to stay on. And so I think this Court could consider that an invited error to the extent there was any error whatsoever. The defendant sort of provoked the Court to dispense with any more detailed investigation of this issue by affirmatively requesting it. And I don't— I understand why you're raising that, but wouldn't that sort of gut the reason for the Garcia hearing, this sort of outside the observation of the judge, you get disagreement that I'm going to continue? I think the purpose of the Garcia hearing is to probe into things like that, yes? I do think that's the purpose of the hearing, but I do think on this particular record, the defendant could be held to have provoked the Court to forego a more probing investigation. We don't know if the defendant or his counsel, and the conflict might have infected that. Well, proceed. You're raising it as a point of clarification. That's good. Yes, Your Honor. Turning to the actual conflict then, this Court's been clear— I direct the Court to the Garcia-Josso case from 2006, the Hernandez case from 2012, that it is the defendant's burden on appeal to show an actual conflict, meaning both, A, that the attorney was in a position of divided loyalties, such that he would be forced to choose between his client and someone else's interests, and that that situation adversely affected the representation of the defendant, and the defendant can satisfy neither of those two required elements in this case. This Court has laid out a four-part test to help assess the first part of it, the divided loyalties part, which considers whether the attorney had confidential information from the other representation that was hurtful to the defendant, whether the two matters were related, and if so, how closely, three, how close in time the representations were, and four, whether the prior representation had unambiguously ended. The district court engaged in a detailed analysis of those factors. This is at record page 252 in its order denying reconsideration. Although the district court said it reserved an ultimate decision on the issue of actual conflict, it borrowed those four factors for the purposes of assessing, essentially, the sufficiency of the Garcia hearing, so it went through all the relevant factors anyway, and in the government's view, correctly concluded that they all tended to show that there was no actual conflict based on this 2008 representation. The court said it was implausible that that representation led to the lawyers having any confidential information that was relevant to the present matter. The matters were entirely unrelated. There's nothing in the record suggesting a relation between the 2008 marijuana crime and the 2017 methamphetamine trafficking whatsoever. The matters were not close in time. I will tell the court candidly that I don't believe this. To my knowledge, the 2019 sentencing date, I don't see that in the record anywhere. I know that the district court's finding was that the lawyer's representation of Mr. Rivera, the witness, dated back to 2008 and was limited to 2008. To the extent there were subsequent proceedings in Mr. Rivera's 2008 case that the lawyer was involved in, that's not in the record anywhere. What about the reference to the brother-in-law and the lawyer representing him? Yes, Your Honor. A couple of points on that. First, I don't think there's anything in the defendant's opening brief setting that up as a separate basis for a hearing, so I think it's waived. But regardless of that, the issue, as best as I understand it, and again, there's really nothing in the record on this, is that the sister, Mr. Rivera's sister, was a potential government witness against the defendant in this case. And the lawyer, Mr. Macias, had represented the sister's husband. The sister didn't testify, so I think that in itself moots the issue. Even if she had testified, there was no attorney-client relationship with her. It was only with the husband. And even ignoring both of those factors, there's simply nothing in the record showing any kind of relevance or connection here. There's, I think, a statement and a footnote in the defendant's motion for reconsideration just alleging that the brother-in-law was involved in the same kind of criminal organization as Mr. Rivera and Mr. Miranda. But there's just nothing in the record to support that. So I think for all those reasons, there's really no separate issue with respect to the brother-in-law. Even if the defendant could show that there was an actual conflict, which for all the reasons I've just explained, I don't think he can in this case based on a decade-plus-old unrelated representation, he still could show no adverse effect, which is also a requirement to trigger a Garcia hearing. An adverse effect exists if there's some showing that the counsel's decisions were actually fettered or affected by concern for the other, in this case, for the past client, Mr. Rivera. And there's nothing in the record here suggesting that Mr. Macias's judgment was in any way fettered by his concern for Mr. Rivera. Why did he hire somebody else to cross-examine Mr. Rivera? The reason for that, Your Honor, is not in the record. There's no explicit statement anywhere that I'm doing this because of concern over this conflict, and I don't want to speculate about it given that it's not in the record. I will say that the second chair counsel that was brought in, Mr. Yanez, was not just a sort of extremely limited engagement solely for the purpose of handling this cross-examination. Of one of two critical witnesses, by the way, I do want to address my opponent's notion that Mr. Rivera, the entire case hinged on Mr. Rivera's testimony. It was, of course, very important testimony that went towards establishing the defendant's knowledge that he had methamphetamine in the car he was stopped in. But that was only one of two witnesses. The government also put on its case agent evidence that Mr. Miranda had been stopped with the three kilograms of methamphetamine. Also through the case agent, evidence of messages on the defendant's phone that tended to show his knowledge of the conspiracy and so forth. And Mr. Macias did cross-examine that witness. So I don't think it's quite right that the entire case rose and fell on Mr. Rivera, though he was very important. All of that said, I definitely think any notion of an adverse effect is dispelled by the very rigorous cross that Mr. Yanez did conduct of Mr. Rivera. And this is at record pages 518 through 54. It's a lengthy cross-examination. In fact, it exceeds fairly significantly the direct examination. It was not sort of take a dive and let this witness off the hook without a vigorous cross-examination. It included subjects like the prior conviction. In fact, it was brought out on direct. And then Mr. Rivera was cross-examined as well on the 2008 marijuana trafficking crime. Mr. Yanez suggested and cross-examined Mr. Rivera on other, tried to get him to admit other past drug activity that he was sort of involved in. It's ongoing kind of drug activity. Cross-examined him on the notion that Mr. Rivera, the witness, had a closer relationship with the organizer of the current drug activity, the methamphetamine activity, down in Juarez, Mexico, than Mr. Miranda did. So sort of elevating Mr. Rivera's status in the organization relative to Mr. Miranda's. And I think that's very important because if Mr. Miranda's representation were concerned, were affected by concern for casting blame on Mr. Miranda relative to Mr. Rivera, you wouldn't see that kind of cross-examination. So I think that dispels that notion. This makes me a little uncomfortable because had, were they co-defendants, this is one of the few areas where it's presumed harm. That's true when co-defendants are represented by. This is not the same. Right, it's not the same because there's. Mr. Rivera, in this case, had his own lawyer. So like in this court's Infante case, for example, in 2005, there was an issue with respect to a couple of witnesses testifying, who had pled guilty, testifying against a defendant where the defendant's lawyer had represented these two witnesses in their guilty pleas in substantially related matters. And in that case, the court was able to put its finger on a concrete problem that that created, which was that this lawyer admitted that when this testimony against his client was over, he was going to go make substantial assistance motions for these witnesses that he still represented. Here, we don't have that kind of problem with concurrent co-representation. We don't have, in other words, Mr. Macias representing both Mr. Miranda and Mr. Rivera in the same matter. The prior representation of Mr. Rivera was in a completely unrelated matter from years earlier, which I think, and I think the district court did a very cogent job of explaining, presents a very different type of circumstance from concurrent co-representation. Moving then to the waiver, assuming the court disagrees that there was insufficient evidence of a conflict and that a Garcia hearing was required, the government thinks the district court's analysis was, once again, spot on on the question of whether there was sufficient indicia in the record to determine that Mr. Miranda's waiver was knowing and voluntary. The district court correctly recognized that Garcia lays out a quite detailed set of guidelines for district courts to follow, but against that backdrop emphasizes that what's required is a case-by-case analysis. It's context-dependent and context-specific. And the district court here explained, this again is in its order, denying reconsideration, and the relevant analysis is at 246 through 253. The court here determined in part what level of detailed colloquy was required in view of the affidavit that the defendant had already filed. The court recognized that the affidavit standing alone would not be enough to establish a knowing and voluntary waiver, but believed it could consider that affidavit in confirming with the defendant in open court, with judicial participation, and eliciting a narrative response from the defendant that he understood his rights and wished to waive them. I'll direct the court, I think the biggest point of dispute here is whether the defendant sufficiently affirmed that he understood he had the right to separate counsel. And he explicitly said he understood that right, both in his affidavit and in the colloquy on the record. In his affidavit, he said, I understand that I have the right to conflict-free representation, and then went on to state that he waived it. There was a similar exchange on the record. The court said, you're entitled to a conflict-free attorney. However, you also may waive it under these circumstances. That's at ROA 272. And so, as the district court correctly found, that aspect of the Garcia analysis was explicitly covered with the defendant. And he repeated in multiple formats that he understood he had the right to conflict-free counsel. This case is unlike Gray v. Estelle, which is the main case the defense relies on for this point. There, there was no colloquy whatsoever, let alone an affidavit affirmatively requesting that the district court allow the attorney to stay on. There was, not only was there no colloquy, but there was no transcript even of it, which was part of what entered into the court's analysis and affected the burden that the court placed on the state there. But all, there was no, do you understand your rights? There was essentially, hey, are you aware that this attorney has sworn out a criminal complaint in an unrelated matter against you before? Do you want to proceed with him anyway? That was the extent of it. We have significantly more here, and therefore, the government does not believe that Gray v. Estelle controls. And if the court has nothing further, the government would ask that the judgment be affirmed. Thank you. Not a lot of rebuttal. First off, the government's reliance on Mr. Miranda's waiver, the reliance is false. And the reason why it's false is because every case that I've read that I'm aware of with regards to dealing with conflict of interest, it requires judicial participation. That is the number one holding of Garcia, and all of the cases that follow Garcia is that the court encourages judicial participation, and it requires the court to put on the record. All the requirements, and we just don't have that. The waiver that was submitted two weeks before, there's no indication that the court participated. Well, we know the court didn't participate in that waiver. With regards to the claims that Rivera was the only one, Mr. Miranda, if I recall the facts correctly, was arrested in a vehicle that was loaded with drugs. Obviously, the courts have held that the mere presence is not enough. And so Mr. Miranda's whole defensive theory went on to the fact that he did not know there were drugs in the car. Mr. Rivera was brought on to rebut that defense. So when I say that Mr. Rivera was the only witness, Mr. Rivera doesn't put him into the driver's seat of the car. But what Mr. Rivera does do is allow the jury, the trier of fact, to make a determination as to whether Mr. Miranda had knowledge. Also, with regards to the counsel that was brought in two weeks, Mr. Yanez. I know Mr. Yanez. Mr. Yanez is a very capable attorney. Like I said earlier, I cannot say anything disparaging of him. I think he did a great job at this time. But one of the things that I've learned as being a trial attorney and an appellate attorney is that when we look at these records and we read the record and we look at the, for example, the cross-examination of Rivera by Yanez, it looks confident. It looks like, okay, yes, he did a good job. He asked questions. But what's missing in the record is the human contact, the conversation that is going on. This isn't a paint-by-the-numbers cross-examination. There is no such thing. There is a factor or a dynamic that you can't get out of a record. And so that is what's missing. That's why I'm telling the court you have 30-plus years of experience and someone who just is on a very promising career. And that dynamic is lost. We can't see that on the record. So while Mr. Yanez looks very competent, and I can't say anything that he's not, that the reason for hiring Mr. Macias had to be because of Mr. Macias' experience and skill in dealing with or defending these type of cases. And then when the number one witness of the government comes up to implant knowledge into the defendants, knowing that he's doing this, Mr. Macias pulls himself out and assigns or has another attorney do this. So on those grounds and the grounds that I previously stated, I would ask the court to remand this case. Did Yanez cross any other witnesses? I'm so sorry? Did Yanez cross any other witnesses? I cannot recall. If they were, they were not significant in terms of, again, the main case was Rivera and the officer who stopped him on the scene. But I can't recall right off the cuff, Your Honor, whether Yanez participated past that. One more time. Can you give us something to get our hands on? What was the conflict? That's the problem. We don't. We can't say it. There's no record. There's nothing manifest face on this record that you can point to conflict. That's the whole reason why we have Garcia. That's the whole reason why the court has to be involved. Without this involvement, we end up right here. This is what happens. We can't look at the record and point to something if something's not brought up or raised. And that's the failings of what is the problem with this record and with the district court's admonishment, is the district court doesn't scratch beyond the surface. So we don't get to know what Mr. Macias's prior representation with Rivera was. Was there a Rule 35 involved? Was he cooperating to save a family member? All these things which could be there are not. And that's the problem we have in this case when the district court does not follow the case law of Infante of Garcia. Thank you, Judge.